OSCN Found Document:STATE ex rel. OKLAHOMA BAR ASSOCIATION v. SMITH

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 STATE ex rel. OKLAHOMA BAR ASSOCIATION v. SMITH
2024 OK 64
Case Number: SCBD-7429
Decided: 09/17/2024
THE SUPREME COURT OF THE STATE OF OKLAHOMA

Cite as: 2024 OK 64, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

 

STATE OF OKLAHOMA ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,
v.
DAVID LEO SMITH, Respondent.

BAR DISCIPLINARY PROCEEDING

¶0 Complainant, State of Oklahoma ex rel. Oklahoma Bar Association, charged Respondent, David Leo Smith, with one count of professional misconduct. The Trial Panel recommended Respondent be publicly censured for his violations, or in the alternative if the Court deems a term of suspension is appropriate, that Respondent be suspended from the practice of law not to exceed ninety (90) days. We hold there is clear and convincing evidence that the totality of Respondent's conduct warrants a suspension from the practice of law for thirty (30) days. Complainant's application to assess costs is denied.

RESPONDENT SUSPENDED FOR 30 DAYS

Stephen Sullins and Jana Harris, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant.

Travis Pickens, Oklahoma City, Aaron Arnall, Midwest City, and M. Joe Crosthwait, Jr., Midwest City, for Respondent.

ROWE, V.C.J.: 

¶1 Complainant, State of Oklahoma ex rel. Oklahoma Bar Association initiated a disciplinary proceeding pursuant to Rule 6, Rules Governing Disciplinary Proceedings ("RGDP"), 5 O.S.2011 ch. 1, app. 1-A, alleging one count of professional misconduct against Respondent, David Leo Smith. Respondent has been a member of the Oklahoma Bar Association in good standing since September 30, 1992. Complainant filed its complaint on March 16, 2023, alleging Respondent mismanaged client property, engaged in an unauthorized referral arrangement, was dishonest toward the Tribunal, and lacked competence in violation of the Oklahoma Rules of Professional Conduct ("ORPC"), 5 O.S.2011 ch. 1, app. 3-A, and the RGDP.

BACKGROUND

¶2 Rhodena Thornton, ("Mother") died intestate on September 9, 2013. At the time of her death, her heirs included her husband, who died two months after her passing, and her four children: Teresa Hand ("Teresa"); Pamela Brown ("Pamela"); Stephen Thornton and Richard Eldridge ("Brothers"). Teresa hired Brad Hilton ("Hilton") to initiate probate proceedings and was appointed as Personal Representative of Mother's Estate.

¶3 Prior to Mother's death, she underwent ankle surgery wherein she received wound care by home health care provider Amedisys, Oklahoma LLC ("Amedisys") and her daughter, Teresa. There was speculation that Amedisys negligently performed Mother's home health care which resulted in her death. Teresa sought attorneys to file medical negligence and wrongful death claims to no avail. Ultimately, Mother's other daughter, Pamela, was referred by attorney, Lynn Williams ("Williams"), to Respondent to pursue the wrongful death claim.

¶4 Respondent agreed to represent Pamela and Brothers in the wrongful death case on behalf of the heirs, although he had never handled a case of this type before. Pamela and Brothers agreed to a forty percent (40%) contingency fee plus expenses for Respondent's work on the wrongful death case. Once the probate court specially appointed Pamela as limited personal representative to prosecute the wrongful death case, Respondent filed the wrongful death action in the district court, which named Amedisys, Teresa, and John and Jane Doe as defendants. Respondent mailed copies of the petition and his employment contract to attorney Hilton.[1]

¶5 Respondent obtained a settlement for the heirs in the amount of $75,000.00 during mediation in October 2016.[2] Pamela approved the settlement statement which outlined deductions from the total settlement amount including the 40% contingency fee for Respondent and litigation expense.[3] The remaining amount owed to the heirs totaled $39,267.48. In December 2016, Respondent deposited the settlement check in the amount $75,000.00 into his IOLTA trust account and paid $20,000.00 to himself and $10,000.00 to attorney Williams as a referral fee.

¶6 Several weeks after the settlement was received, Teresa filed a motion in the probate court for status conference seeking settlement information from Respondent. The probate court ordered Respondent to prepare a settlement report for the Estate and the court within ten days.[4] After Respondent provided the settlement report, Teresa filed Personal Representative's Objection to Settlement Report and Contract of Employment of David L. Smith arguing probate court approval was required for Respondent's employment contract and settlement of the case and Respondent should be denied any fees.[5] A hearing was held on Teresa's objection on October 23, 2017, with Respondent absent. Despite Respondent's absence, the court sustained Teresa's objection and ordered Respondent to deposit all settlement proceeds with the Osage County Court Clerk on or before November 6, 2017, without deduction for attorney fees or other costs. Additionally, Respondent was ordered to appear on November 13, 2017, for determination of his attorney fees and costs.

¶7 Respondent filed a Motion to Vacate arguing he never received notice of the hearing, thereby violating his right to due process. Respondent testified that if his employment contract was voided, his authority to have settled the case would be obviated and the settlement proceeds would need to be returned to Amedisys, not paid to the Estate.[6] The court denied Respondent's Motion to Vacate finding "service of notice was as required."[7] Respondent appealed the trial court's denial of his Motion to Vacate.

¶8 The Court of Civil Appeals affirmed the probate court's denial of Respondent's Motion to Vacate, finding Respondent was provided proper notice but remanded the case to the probate court to determine Respondent's allowable fees, costs, and expenses arising from the wrongful death representation.[8] Following the Court of Appeal's decision, Respondent filed a Motion to Approve Attorney Fees with the probate court on May 30, 2019. In his motion, he stated "[a]s of today, David Smith has deposited with the Court the net proceeds of the settlement."[9] However, Respondent did not deposit the settlement proceeds with the Estate until May 2020--nearly one year later. Through June 2022, Hilton and Respondent litigated the issue of Respondent's attorney fees. The probate court ultimately awarded Respondent $52,968.50 for fees and costs in the wrongful death case and subsequent litigation.[10] The probate court ordered the remaining balance of the settlement proceeds be paid to Hilton as his allowable attorney fees for his representation of the Estate. In the end, the heirs received none of the settlement proceeds from the wrongful death case.

¶9 During the course of this protracted litigation, Hilton filed a grievance against Respondent with the OBA on February 28, 2020. Respondent submitted a response to the grievance on June 17, 2020, in which he disputed the allegations set forth in Hilton's grievance. The OBA filed its complaint on March 16, 2023--three years later--alleging violations of Rules 1.1, 1.3, 1.5(e), 1.15, 3.3, 3.4(c), 8.4(a), and 8.4(d), ORPC and Rule 1.3, RGDP. Respondent readily admitted his conduct violated Rule 1.15, ORPC.[11] The PRT held a hearing on March 6 and 7, 2024,[12] and filed its report and recommendation with this Court on March 28, 2024. The PRT found Respondent violated Rules 1.5(e) and 1.15, ORPC but found Complainant failed to establish violations of Rules 1.1, 1.3, 3.3, 3.4(c), 8.4(a), and 8.4(d), ORPC and Rule 1.3, RGDP, by clear and convincing evidence. The PRT recommended Respondent receive a public censure, or in the alternative, a suspension from the practice of law not to exceed 90 days.

STANDARD OF REVIEW

¶10 This Court possesses exclusive jurisdiction in Bar Association disciplinary proceedings. State ex rel. Okla. Bar Ass'n v. Holden, 1995 OK 25, ¶ 10, 895 P.2d 707, 711. We review the evidence de novo to determine whether the allegations of misconduct have been established by clear and convincing evidence. Rule 6.12(c), RGDP; See also State ex rel. Okla. Bar Ass'n v. Bolusky, 2001 OK 26, ¶ 7, 23 P.3d 268, 272. Clear and convincing evidence is that measure or degree of proof which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. State ex rel. Okla. Bar Ass'n v. Green, 1997 OK 39, ¶ 5, 936 P.3d 947, 949.

¶11 Our goals in disciplinary proceedings are to protect the interests of the public and to preserve the integrity of the courts and the legal profession, not to punish attorneys. State ex rel. Okla. Bar Ass'n v. Kinsey, 2009 OK 31, ¶ 15, 212 P.3d 1186, 1192. We consider the discipline previously imposed for similar professional misconduct to ensure that discipline is administered uniformly. Id. ¶ 16, 212 P.3d at 1192. Discipline, however, is decided on a case-by-case basis to account for differences in the offending conduct and mitigating circumstances. Id.

ANALYSIS

¶12 Respondent stands accused of violating Rules 1.1, 1.3, 1.5(e), 1.15, 3.3, 3.4(c), 8.4(a), and 8.4(d), ORPC and Rule 1.3, RGDP.

¶13 Rule 1.1 requires that a lawyer provide competent representation to a client.[13] Rule 1.3 requires that each lawyer act with reasonable diligence and promptness in representing a client.[14] Complainant alleges Respondent failed to render competent representation of Pamela because Respondent admitted to never having handled a wrongful death case. The fact that Respondent had never handled a case of this type is insufficient to support a claim of lack of competence. Our standard for practicing law does not require expertise, in fact "[a] lawyer need not necessarily have . . . prior experience to handle legal problems of a type with which the lawyer is unfamiliar." Rule 1.1, ORPC, cmt. [2]. If Complainant's argument carried the day, all newly admitted attorneys would effectively lack competence to handle their first case. Further, testimony demonstrates that Respondent had handled several personal injury cases which encompass many similarities to wrongful death cases. The record fails to establish that Respondent lacked competence to handle the wrongful death case. Moreover, it is hard to reconcile a claim for lack of competence when Respondent obtained a presumably successful settlement for his client without objection from the heirs.

¶14 Complainant further alleges that Respondent lacked competence because he did not review the probate file. The record shows Pamela had the probate court's permission to hire counsel to pursue the wrongful death claim and Respondent properly initiated the wrongful death case on behalf of his client. Nothing in the record demonstrates Respondent would have been required to review the probate file, or that such a review would have affected Respondent's ability to pursue and settle the wrongful death case. Moreover, Complainant alleges Respondent violated Rule 1.3 because he delayed payment of the settlement proceeds. But based upon testimony, Respondent delayed payment of the settlement proceeds by the instruction of his client and Teresa's objection to Respondent's employment contract.[15] Thus, we find Complainant has failed to establish by clear and convincing evidence that Respondent violated Rules 1.1 and 1.3, ORPC.

¶15 Rule 1.5(e) prohibits a lawyer from dividing a fee between lawyers who are not in the same firm unless (1) the division is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation; (2) the client agrees to the arrangement and the arrangement is confirmed in writing; and (3) the total fee is reasonable.[16] Based upon testimony, Respondent's client was unaware that Respondent paid Lynn Williams a $10,000.00 referral fee. The evidence demonstrates Pamela did not agree in writing to the referral fee arrangement. Respondent admitted to violating Rule 1.5(e)(2). Thus, we find Respondent violated Rule 1.5(e)(2), ORPC.

¶16 Rule 1.15 relates to a lawyer's duties in safekeeping client property.[17] Violations of Rule 1.15 can be sorted into three categories: (1) commingling, (2) simple conversion, and (3) misappropriation. State ex rel. Oklahoma Bar Ass'n v. Combs, 2007 OK 65, ¶ 13, 175 P.3d 340, 346. The categories carry increasing levels of culpability, with misappropriation being the most serious. Id. Commingling occurs when client funds are combined with the lawyer's personal funds. Id. at ¶ 14, 175 P.3d at 346. Simple conversion occurs when an attorney applies a client's money to a purpose other than that for which it came to be entrusted to the lawyer. Id. at ¶ 15, 175 P.3d at 346. Misappropriation occurs when an attorney purposely deprives a client of money through deceit and fraud. Id. at ¶ 16, 175 P.3d at 346.

¶17 Respondent admits to a violation of Rule 1.15, ORPC. We accept Respondent's admission and find from clear and convincing evidence that his conduct violated Rule 1.15, ORPC. Various times after Respondent deposited the settlement proceeds into his trust account, and before he paid the settlement proceeds to the heirs, the balance of the settlement proceeds fell below the amount owed to the heirs. Moreover, Respondent admitted he spent trust account funds on other matters at his law practice, such as payroll and business expenses during a challenging period of time. Respondent's admission of wrongdoing and his use of the settlement proceeds for his own business expenses amount to commingling and simple conversion.

¶18 Rule 3.3., ORPC, concerns candor to the tribunal.[18] Complainant asserts that several of Respondent's filings with the court included false statements. For example, in Respondent's Response to Motion to Reconsider and/or Clarify Order filed in Osage County on February 25, 2022, Respondent stated that but for Teresa's objection to Respondent's employment in April of 2017, the heirs would have received their money in May or June 2017 instead of 2020. Complainant contends that this statement is false because Respondent did not have sufficient funds in his trust account to pay the heirs during May or June 2017. However, the record shows that there were several days in which Respondent's trust account contained sufficient funds to pay the heirs in May or June 2017.[19] Thus, we do not find Complainant's allegation is sufficient to support a violation of Rule 3.3, ORPC.

¶19 Additionally, Complainant points to Respondent's Motion to Approve Attorney Fees filed on May 30, 2019--in which Respondent stated that he had deposited with the probate court the net proceeds of the settlement--when he had not, in fact, deposited the proceeds of the settlement. Respondent later testified that he intended to deposit the funds on that date but was told by a court clerk that everything was on hold pending the Writ of Certiorari filed with this Court on April 26, 2019. While Respondent may have intended to deposit the net settlement proceeds the day he filed his Motion to Approve Attorney Fees, he made a false statement of material fact to the probate court that he did not correct. Rule 3.3, ORPC states that a lawyer shall not knowingly "fail to correct a false statement of material fact...." Respondent's statement that he had deposited the settlement proceeds was a material fact within his motion. When Respondent did not deposit the net proceeds because of what the court clerk told him, Respondent had a duty to correct his motion. His failure to do so was violative of Rule 3.3, ORPC.

¶20 Rule 3.4(c) requires that a lawyer shall not knowingly disobey an obligation given by the court.[20] Complainant contends that Respondent knowingly disobeyed the probate court's October 23, 2017, order when he failed to deposit the settlement proceeds with the Osage County Clerk.[21] Instead of depositing the settlement proceeds, Respondent filed a Motion to Vacate, arguing he did not receive notice of the October 23, 2017, hearing. Respondent's decision to file the Motion to Vacate was not unreasonable when Respondent believed his clients' settlement was in jeopardy. Based upon the record, Respondent did not disobey the court's order, he objected to it and ultimately appealed it. As such we find Complainant failed to establish by clear and convincing evidence a violation of Rule 3.4(c), ORPC.

¶21 Rule 8.4(a), ORPC, provides that it is professional misconduct for a lawyer to violate or attempt to violate the Rules of Professional Conduct.[22] Due to Respondent's admission to violating Rules 1.5(e) and 1.15, ORPC, Respondent also admits to violation Rule 8.4(a), ORPC. State ex rel. Oklahoma Bar Ass'n v. Combs, 2007 OK 65, ¶ 13, 175 P.3d 340, 346.

¶22 Rule 8.4(d), ORPC, provides that it is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice.[23] This rule, properly understood, sanctions conduct that interferes with the administration of judicial process. It covers only severe interference with judicial proceedings or conduct of such a severe nature that it harms our system of representative litigation as a whole. Combs, ¶ 34, 175 P.3d at 351. We find an absence of clear and convincing evidence to support this allegation.

¶23 Based upon the foregoing, we find that Complainant has established by clear and convincing evidence that Respondent engaged in misconduct in violation of Rules 1.5(e)(2), 1.15, 3.3, and 8.4(a), ORPC. Furthermore, we find that Respondent has engaged in acts contrary to prescribed standards of conduct and which bring discredit upon the legal profession, in violation of Rule 1.3, RGDP.[24]

AGGRAVATING AND MITIGATING CIRCUMSTANCES 

¶24 Mitigating circumstances may be considered in evaluating an attorney's conduct and assessing the appropriate discipline. State ex rel. Oklahoma Bar Ass'n v. Parsons, 2002 OK 72, ¶ 17, 57 P.3d 865, 869. Respondent has been licensed to practice law since September 1992--over 30 years--and has not received any formal discipline from this Court. Respondent was cooperative during Complainant's investigations, appeared for the disciplinary hearing, and presented several character witnesses: Kenyon Williams, OBA President-Elect; Judge Geary Walke, retired judge; Yolanda Downing, attorney; and James L. Gibbs, attorney.

¶25 The PRT found all character witnesses' testimonies to be credible. Additionally, all character witnesses testified as to Respondent's general character, skill as a lawyer, his integrity, and concern for his clients. The PRT found "Hilton was not a credible witness"[25] and questioned "not only his motivation in filing the grievance against Respondent but also his litigation tactics throughout the years the case was pending."[26] Both the PRT and Judge Stuart Tate noted that the case "was subject to heated litigation and sometimes vexatious exchanges which is clear from the pleadings."[27] Respondent also promptly admitted he violated Rule 1.15 in his response to the complaint and admitted he violated Rule 1.5(e) during the PRT hearing.

¶26 We cannot ignore that although Respondent obtained a settlement for his client, the heirs did not ultimately reap the benefit of the settlement proceeds. And although Respondent eventually deposited the settlement proceeds with the Estate, the proceeds were depleted by attorney fees and costs owed to Respondent and Hilton in light of their arguably unnecessary post settlement litigation.

¶27 Furthermore, Respondent testified that although it is not an excuse, his failure to safekeep the settlement proceeds arose from a "perfect storm"[28] of circumstances. For example, Respondent office-shared with two other attorneys, in which one attorney went through a divorce and another was diagnosed with cancer. Respondent testified that these circumstances forced him to cover the bills for the office. Respondent testified this would never happen again and the record demonstrates his actions were not born of purposeful intent to deceive his clients or other interested parties.

¶28 Since the grievance was filed in 2020, Respondent has established a new bookkeeping system for his trust account and consulted with Jim Calloway of the Oklahoma Bar Association to help implement the new trust account system. Moreover, Respondent has successfully completed relevant CLEs, such as "Fiduciary Litigation Update," "Trust Accounting Essentials," and "Ethics in Civil Litigation Update, Parts 1 and 2."

DISCIPLINE 

¶29 Our goals in bar disciplinary matters are to protect the interests of the public and preserve the integrity of the legal profession, not to punish attorneys. Kinsey, 2009 OK 31, ¶ 15, 212 P.3d at 1192. With these goals in mind, we must weigh all relevant factors including those that justify severe sanctions and those that would mitigate the severity of discipline. State ex rel. Okla. Bar Ass'n v. Stewart, 2003 OK 13, ¶ 19, 71 P.3d 1, 4. We must also weigh the deterrent effect of our discipline on the Respondent and other attorneys who might contemplate similar conduct in the future. State ex rel. Okla. Bar Ass'n v. Taylor, 2003 OK 56, ¶ 22, 71 P.3d 18, 29.

¶30 Complainant argues the appropriate discipline is suspension from the practice of law for six months. The PRT recommends Respondent receive a public censure, or in the alternative be suspended from the practice of law not to exceed 90 days. This Court remains firm in its assertion that all cases involving mishandling of client funds are significant. The mere appearance of impropriety involving money entrusted to a lawyer reflects upon the integrity of the entire profession, and a violation of this entrustment demands discipline. Respondent's mishandling of client property and our jurisprudence regarding similar discipline suggests a period of suspension is appropriate.

¶31 In State ex rel. Oklahoma Bar Association v. Combs, 2007 OK 65, 175 P.3d 340 the disciplined attorney commingled and converted funds in violation of Rules 1.15 and 8.4(a), ORPC. The disciplined attorney's trust account should have maintained a balance of $6,500.00 but it fell well below that amount at various times before the client was paid. We found that a suspension of 90 days was appropriate. In State ex rel. Oklahoma Bar Association v. Withers, 2019 OK 47, 445 P.3d 229, the disciplined attorney commingled client funds by depositing a settlement into his personal account and the balance owed fell below what was owed to the client on numerous occasions. Distinguishable from Respondent, the attorney in Withers was found to have engaged in conduct involving misrepresentation when he endorsed the settlement agreement with his client's name in violation of Rule 8.4(c), ORPC. This attorney was suspended from the practice of law for 90 days and ordered to pay costs.

¶32 Complainant relies heavily on State ex rel. Oklahoma Bar Association v. Mortensen, 2023 OK 32, 527 P.3d 724, to argue Respondent should be suspended from the practice of law for at least six months. The disciplined attorney in Mortensen had eight grievances filed against him wherein he converted and misappropriated funds belonging to his clients, among several other violations. We found that disbarment was the appropriate discipline.

¶33 Here, Respondent failed to safekeep his client's funds, did not receive approval from his client to pay a referral fee, and failed to correct a false statement of material fact he made to the probate court, in violation of Rules 1.5(e)(2), 1.15, and 3.3, ORPC. Considering the totality of the circumstances, we find Respondent's conduct does not rise to the level of severity as in Mortensen. Rather, Respondent's conduct was the result of a confluence of errors and oversight as opposed to an intent to defraud. And unlike Mortensen, Respondent demonstrated genuine remorse and accepted responsibility for his actions.

¶34 When imposing discipline, we are mindful of its deterrent effect, as discipline is imposed to set an example for other lawyers and not to serve as punishment. The facts of this case are unique. First, over four years have lapsed between the filing of the grievance and today's opinion, with no explanation reflected in the record for this unreasonable delay. Due to the lapse of time, Respondent has undoubtedly endured hardship and additional expenses during Complainant's investigation into events that occurred almost seven years ago. Moreover, Respondent has made it clear that he has since learned from his mistake and has taken the necessary steps to prevent this conduct from happening again. Second, the record demonstrates Respondent's conduct was due to sloppy negligence, not greedy intent. We are mindful of the severity of mismanagement of client's funds; however, a suspension of six months--as applied to the facts of this case--would serve a punitive result as opposed to a necessary deterrent. Accordingly, we find that our goals are best met by the imposition of a 30-day suspension from the practice of law to begin the date of this opinion.

ASSESSMENT OF COSTS

¶35 "The appropriateness of assessing costs hinges on whether the professional misconduct charges have been proven by clear and convincing evidence and whether the costs are related to a violation of a rule of professional conduct or disciplinary rule." State ex rel. Oklahoma Bar Ass'n v. Hill, 2012 OK 66, ¶ 43, 281 P.3d 1264, 1274 (citing State ex rel. Oklahoma Bar Ass'n v. Albert, 2007 OK 31, ¶ 27 n. 33, 163 P.3d 527, 538). On May 28, 2024, Complainant filed an application to assess the costs of the disciplinary proceedings in the amount of $6,180.14. Respondent filed an objection arguing that because the PRT only found two of the seven claims were established by clear and convincing evidence, he should only be responsible for the costs associated with the two counts, which he promptly admitted.

¶36 When some of the charges have been proven but other have not, this Court has reduced costs proportionately. See e.g. State ex rel. Okla. Bar Ass'n v. Hill, 2012 OK 66, 281 P.3d 1264 (costs reduced proportionately when respondent prevailed on three of the fourteen counts asserted against him); State ex rel. Okla. Bar Ass'n v. Funk, 2005 OK 26, 114 P.3d 427 (costs reduced proportionately when respondent prevailed on two of three counts); State ex rel. Okla. Bar Ass'n v. Israel, 2001 OK 42, 25 P.3d 909 (costs reduced by two thirds when respondent prevailed on two of three counts).

¶37 Respondent stipulated to two of the seven allegations and ultimately prevailed on four of the seven allegations asserted against him. Moreover, Respondent incurred additional expenses and turmoil during a four-year investigation and trial process for allegations that were ultimately unfounded. Therefore, Complainant's application to assess costs is denied.

RESPONDENT SUSPENDED FOR 30 DAYS

Rowe, V.C.J., Winchester, Edmondson, Gurich, and Kuehn, JJ., concur;

Kauger, J., and Combs, J. (by separate writing), concur in part and dissent in part;

Kane, C.J., recused;

Darby, J., not voting.

FOOTNOTES

[1] Hilton, on behalf of Teresa, did not express an objection to Respondent's employment contract with Pamela.

[2] Hilton and Williams were invited to attend the mediation.

[3] $30,000.00 was the attorney's fee and $5,732.58 was the litigation expense. Per the employment contract, Respondent was owed $35,732.58 from the settlement amount.

[4] When the parties attended the status conference on March 6, 2017, Respondent's IOLTA trust account balance was $22,829.96--well below the $39,267.48 settlement proceeds he was holding for the Estate.

[5] Neither Hilton nor the PRT could locate an order or authority that required Respondent to obtain prior approval to settle the wrongful death case.

[6] When Respondent filed his Motion to Vacate on November 6, 2017, Respondent's IOLTA balance was $9,720.59--well below the $39,267.48 of the settlement proceeds he was holding for the Estate.

[7] Complainant Exhibit 5, 094. Minute Order Denying Motion to Vacate.

[8] We note the irony of the Court of Civil Appeals opinion in sustaining the objection to Respondent's employment but remanding to award Respondent fees.

[9] Complainant Exhibit 5, 170. Motion to Approve Attorney Fees.

[10] The probate court subtracted the amount Respondent had already paid himself, $35,732.58, leaving an additional $17,235.98 owing unto Respondent.

[11] Respondent admitted he violated Rule 1.5(e) during the PRT hearing.

[12] The record does not reflect why the PRT hearing took place four years after the filing of the grievance, as the grievance was filed in early 2020 and complaint filed in March 2023.

[13] Rule 1.1, ORPC, provides, "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation."

[14] Rule 1.3, ORPC, provides, "A lawyer shall act with reasonable diligence and promptness in representing a client."

[15] Pamela expressed concern that the settlement proceeds would be used to pay legal fees incurred by Teresa, who was personal representative, and that no funds would be distributed to the heirs. The record is silent as to whether Respondent argued to the probate judge that he could distribute the settlement proceeds under 12 O.S. § 1053.

[16] Rule 1.5(e), ORPC, provides "A division of a fee between lawyers who are not in the same firm may be made only if:

(1) the division is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation;
(2) the client agrees to the arrangement and the agreement is confirmed in writing; and
(3) the total fee is reasonable."

[17] Rule 1.15, ORPC, provides in pertinent part:

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property.

[18] Rule 3.3, ORPC, provides in pertinent part:

A lawyer shall not knowingly:

(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;
(2) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or
(3) offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal. A lawyer may refuse to offer evidence that the lawyer reasonably believes is false.
(4) fail to disclose a fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client.

[19] May 1, 2017, Respondent's trust account balance totaled $54,078.67; May 2, 2017, Respondent's trust account balance totaled $66,419.67; and May 3, 2017, Respondent's trust account balance totaled $53,121.92. June 2, 2017, Respondent's trust account balance totaled $45,925.27; June 9, 2017, Respondent's trust account balance totaled $44,925.27; and June 12, 2017, Respondent's trust account balance totaled $42,525.27.

[20] Rule 3.4(c) provides:

"A lawyer shall not:

. . .
(c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists;

[21] The Order stated: "David L. Smith is hereby ordered to deposit all settlement proceeds with the Osage county Court Clerk, without deduction for attorney fees, costs, advanced or otherwise." Complainant Exhibit 5, 060. Court Minute.

[22] Rule 8.4(a), ORPC, provides:

It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

[23] Rule 8.4(a), ORPC, provides:

It is professional misconduct for a lawyer to:

...
(d) engage in conduct that is prejudicial to the administration of justice;

[24] Rule 1.3, RGDP, provides:

The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline.

[25] Report of Professional Responsibility Tribunal, ¶ 17.

[26] Id.

[27] Complainant Exhibit 5, 269. Order on Attorney Fee Application of David Smith; Order on Second Application for Order Directing Personal Representative to Pay Attorney Fees and Costs; First Supplemental to Second Application for Order Directing Personal Representative to Pay Attorney Fees and Costs; Order on Final Account, Petition for Decree of Distribution of Estate and Discharge of Personal Representative.

[28] Tr. Vol. 2, 432:8.

 

 

COMBS, J., concurring in part and dissenting in part:

¶1 I concur in the majority's decision to discipline the Respondent, but I dissent from imposition of discipline that amounts to a mere slap on the wrist and from the denial of Complainant's application to assess costs in toto. My dissent concerning the degree of discipline arises from my disagreement with the majority's characterization of Respondent's "use of the settlement proceeds for his own business expenses" as something that "amount[s] to commingling and simple conversion" and that "was the result of a confluence of errors and oversight as opposed to an intent to defraud." Majority Op. ¶¶ 17, 33. This error in weighing Respondent's actions leads to a virtual cascade of errors, such as the majority's reliance upon State ex rel. OBA v. Combs, 2007 OK 65, 175 P.3d 340, as an analogous case involving "commingled and converted funds," see Majority Op. ¶ 31, and their denial of all costs associated with this Rule 6 disciplinary proceeding.

¶2 The majority acknowledges that "[v]iolations of Rule 1.15 [of the Oklahoma Rules of Professional Conduct (ORPC)] can be sorted into three categories: (1) commingling, (2) simple conversion, and (3) misappropriation." Id. ¶ 16. The majority correctly defines "simple conversion" and "misappropriation." The former violation "occurs when an attorney applies a client's money to a purpose other than that for which it came to be entrusted to the lawyer," and the latter, more serious violation "occurs when an attorney purposely deprives a client of money through deceit and fraud." Id. Yet the majority fails to analyze and explain why Respondent's actions constitute simple conversion and not misappropriation. Instead, they simply describe the actions and then declare the outcome that such actions "amount to commingling and simple conversion."

¶3 The primary difference between misappropriation and simple conversion is intent. "Intent is a required element of the third level of culpability, misappropriation . . . . Intent is not, however, necessary to prove simple conversion." State ex rel. OBA v. Helton, 2017 OK 31, ¶¶ 29--30, 394 P.3d 227, 238.

¶4 A proper analysis of Respondent's actions demonstrates why his violation amounts to misappropriation, not simple conversion. When Respondent settled the wrongful death case for $75,000.00 in October of 2016, had he mistakenly thought that he was entitled to the entire sum as attorney fees and costs, there would have been a taking with no intent to deprive the client of money through deceit and fraud--i.e., a simple conversion. That's not our scenario here. Instead, Respondent knew that the signed contract for legal representation entitled him to take for himself $30,000.00 in fees and $5,732.58 in costs and that remainder of $39,267.48 belonged to someone else (be that his three clients or the decedent's estate and heirs), as outlined in the settlement statement that Respondent presented to Pamela Brown for approval. See Majority Op. ¶ 5. Based upon that knowledge, Respondent "paid $20,000.00 to himself and $10,000.00 to attorney [Lynn] Williams as a referral fee." Id. Consequently, when he took any of the $39,267.48 remainder from his IOLTA trust account to "cover the bills for the office" and "payroll and business expenses during a challenging period of time," see id. ¶¶ 17, 27, Respondent knew he was taking money that didn't belong to him. He was purposely depriving his clients of money. Moreover, Respondent engaged in a 3½-year coverup of his actions through deceit and sleight-of-hand. Within a year of the settlement, the probate court had ordered Respondent "to deposit all settlement proceeds with the Osage County Court Clerk, without deduction for attorney fees, costs, advanced or otherwise" by no later than November 6, 2017. See id. ¶¶ 6, 20 & n.21. Nevertheless, Respondent engaged in further litigation (i.e., filing a motion to vacate the probate court's order and filing a subsequent appeal of the denial of his motion to vacate) that bought him a substantial amount of time--nearly two more years--to recoup the money he had stolen. Id. ¶¶ 7--8. Apparently, Respondent still needed more time. So, he lied to the probate court in a filing dated May 30, 2019, by claiming he "ha[d] deposited with the Court the net proceeds of the settlement" when in fact he had not.[1] Id. ¶ 8. He didn't actually deposit the settlement proceeds with the court until May 2020. Id. We may conclude that clear and convincing evidence exists that Respondent intentionally deprived his clients of money through subterfuge and deceit. That constitutes "misappropriation" in every sense of the word.

¶5 This Court should be relying upon cases that involved misappropriation to gauge the appropriate range of discipline for Respondent. Instead, the majority has relied upon cases that involved commingling and simple conversion, like State ex rel. OBA v. Combs, 2007 OK 65, 175 P.3d 340, and State ex rel. OBA v. Withers, 2019 OK 47, 445 P.3d 229. For instance, in Combs this Court determined an attorney committed commingling and simple conversion when he settled a wrongful death suit, deposited the settlement proceeds into his trust account, and then--because of a miscommunication--his staff inadvertently deposited almost the entire settlement amount into his operating account and used the money for personal expenses. Combs, 2007 OK 65, ¶¶ 10, 17, 175 P.3d at 345, 347. That description of the attorney's conduct renders Combs distinguishable from the current case.

¶6 Complainant proffers State ex rel. OBA v. Mortensen, 2023 OK 32, 527 P.724--one of this Court's more recent cases involving misappropriation--for our consideration. In that case, the attorney was disbarred for misappropriating client funds, failing to diligently represent clients, and failing to keep clients informed. But Complainant is not seeking disbarment of the Respondent; Complainant is only asking for a 6-month suspension. That is a reasonable adjustment that accounts for the differences between this case and Mortensen. I would impose the requested 6-month suspension upon Respondent as discipline.

¶7 Finally, I would grant the full amount of costs that Complainant requests. The majority dismisses the Bar Association's entire investigation because "Respondent stipulated to two of the seven allegations and ultimately prevailed on four of the seven allegations asserted against him." Majority Op. ¶ 37. First, Respondent stood accused of violating nine rules, and the majority found him in violation of five rules. Compare id. ¶ 12 ("Respondent stands accused of violating Rules 1.1, 1.3, 1.5(e), 1.15, 3.3, 3.4(c), 8.4(a), and 8.4(d), ORPC and Rule 1.3, RGDP."), with id. ¶ 23 ("[W]e find that Complainant has established by clear and convincing evidence that Respondent engaged in misconduct in violation of Rule 1.5(e)(2), 1.15, 3.3, and 8.4(a), OPRC . . . . [and] that Respondent has engaged in acts contrary to prescribed standards of conduct and which bring discredit upon the legal profession, in violation of Rule 1.3, RGDP."). Thus, by my count, Respondent stipulated to two of the nine allegations against him and ultimately prevailed upon only four of the nine. Moreover, at least one of the four allegations upon which Respondent prevailed appears to have been a close call.[2] See id. ¶ 20 (discussing the alleged violation of Rule 3.4(c) of the ORPC). Furthermore, the majority fails to consider the fact that Respondent's two admissions do not excuse the Complainant from presenting, or this Court from searching the record for, clear and convincing proof of the alleged violations. See State ex rel. OBA v. Johnson, 2024 OK 62, ¶ 9, --- P.3d --- ("Even when the charges are deemed admitted, this Court will impose discipline only upon finding that clear and convincing evidence demonstrating the misconduct was presented." (citing State ex rel. OBA v. Clark, 2023 OK 27, ¶ 10, 527 P.3d 708, 712)); see also Majority Op. ¶ 17 (wherein the majority seemingly acknowledges this principle by "accept[ing] Respondent's admission and find[ing] clear and convincing evidence that his conduct violated Rule 1.15 ORPC" (emphasis added)). The grievance in this case raised legitimate issues that Complainant needed to investigate, both for its own sake in presenting a case against Respondent and for the sake of the public. Consequently, Complainant is entitled to recoup its costs.

¶8 For all these reasons, I respectfully concur in part and dissent in part.

FOOTNOTES

[1] Even at this point, Respondent wasn't trying to recoup the full $75,000.00. He was apparently only trying to recoup the $39, 267.48 remainder, or "net proceeds."

[2] It is not entirely clear to me that we should excuse Respondent's failure to comply with the probate court's order to deposit all the settlement funds because of an objection that serves as the basis for filing a motion to vacate. The better course would have been for Respondent to both comply with the order and file a motion to vacate.

 

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
2001 OK 26, 23 P.3d 268, 72 OBJ 832, 
STATE ex. rel. OKLAHOMA BAR ASSN. v. BOLUSKY
Discussed

 
1997 OK 39, 936 P.2d 947, 68 OBJ 1288, 
State ex rel. Oklahoma Bar Ass'n v. Green
Cited

 
2001 OK 42, 25 P.3d 909, 72 OBJ 1498, 
 STATE ex. rel. OKLAHOMA BAR ASSN. v. ISRAEL
Discussed

 
1995 OK 25, 895 P.2d 707, 66 OBJ 1108, 
State ex rel. Oklahoma Bar Assn. v. Holden
Discussed

 
2002 OK 72, 57 P.3d 865, 
STATE ex. rel. OKLAHOMA BAR ASSN. v. PARSONS
Discussed

 
2003 OK 13, 71 P.3d 1, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. STEWART
Discussed

 
2003 OK 56, 71 P.3d 18, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. TAYLOR
Discussed

 
2005 OK 26, 114 P.3d 427, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. FUNK
Discussed

 
2007 OK 31, 163 P.3d 527, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. ALBERT
Discussed

 
2007 OK 65, 175 P.3d 340, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. COMBS
Discussed at Length

 
2009 OK 31, 212 P.3d 1186, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. KINSEY
Discussed at Length

 
2012 OK 66, 281 P.3d 1264, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. HILL
Discussed at Length

 
2017 OK 31, 394 P.3d 227, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. HELTON
Discussed

 
2019 OK 47, 445 P.3d 229, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. WITHERS
Discussed at Length

 
2023 OK 27, 527 P.3d 708, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. CLARK
Discussed

 
2023 OK 32, 527 P.3d 724, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. MORTENSEN
Discussed at Length

 
2024 OK 62, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. JOHNSON
Cited

Title 12. Civil Procedure

 
Cite
Name
Level

 
12 O.S. 1053, 
Wrongful Death - Limitation of Actions - Damages - Death of an Unborn Person
Cited

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA